IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| BOOTH T. JAMES, III, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.: 2:15-cv-332-MHT-GMB |
| | ) | |
| MONTGOMERY REGIONAL AIRPORT AUTHORITY, *et al.*, | ) ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b)(1) this case was referred to the undersigned United States Magistrate Judge for review and submission of a report with recommended findings of fact and conclusions of law. Doc. 5.  Pending before the court is Defendants' Renewed Motion to Dismiss (Doc. 35), which seeks the dismissal of all claims stated in Plaintiff's Amended Complaint. Doc. 34.  For the reasons stated herein, the Magistrate Judge RECOMMENDS that the Renewed Motion to Dismiss (Doc. 35) be GRANTED in part, and DENIED in part, as set forth below.

### I. Background

Plaintiff filed his *pro se* complaint on May 18, 2015 (Doc. 1), and has since amended his allegations on two occasions. Docs. 23 & 34.  The operative Amended Complaint purports to state two causes of action, for negligence and wrongful termination, and also references 42 U.S.C. § 1983. Doc. 34 at 2–7.  The defendants are the Montgomery Regional Airport Authority ("MRAA"), Plaintiff's former employer; Phil

Perry, the MRAA Executive Director, sued in both his individual and official capacities; and William Howell, the MRAA Chief of Police, sued in both his individual and official capacities. *See* Doc. 34 at 2–6. While the allegations are wide-ranging and at times confusing, the crux of Plaintiff's complaint is that Defendants retaliated against him for speaking out about corruption within the MRAA police force. *See* Doc. 34 at 8–11.

## II. DISCUSSION

All litigants, *pro se* or not, must comply with the Federal Rules of Civil Procedure and federal pleading standards. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 556); *see also Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ("[I]t is well established that, in passing on a motion to dismiss . . . the allegations of the complaint should be construed favorably to the pleader.").

Yet the court must liberally construe a *pro se* litigant's pleadings. *GJR Investments, Inc. v. Cty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds by Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010) (citations omitted) ("Courts do

and should show a leniency to *pro se* litigants not enjoyed by those with the benefit of a legal education."). Likewise, a court should not insist on formalities where the substance of a pleading does not comport with the label a *pro se* party attaches to it. *See Castro v. United States*, 540 U.S. 375, 382 (2003) (citing *Hughes v. Rowe*, 449 U.S. 5, 10 (1980); *Andrews v. United States*, 373 U.S. 334, 337 (1963)). On the other hand, the court does not have "license to serve as *de facto* counsel for a party . . . or to rewrite an otherwise deficient pleading in order to sustain an action." *GJR Investments, Inc.*, 132 F.3d at 1369. In this instance, the liberally construed Amended Complaint does not need to be rewritten from a substantive standpoint to state a cause of action under 42 U.S.C. § 1983, but it fails to state a negligence claim or a claim under Title VII of the Civil Rights Act of 1964.

**A.     Negligence Claim**

The Amended Complaint describes Count One as a "Claim for Negligence," but the substance of the allegations both under this heading and throughout the complaint principally relate to Plaintiff's "wrongful job termination for exercising a Constitutional 1st Amendment Right, Freedom of Speech regarding issues of public safety and interest." Doc. 34 at 2–3. The negligence claim is premised on a "duty to know the law and the legal responsibilities" associated with Plaintiff's employment. Doc. 34 at 2. The court is not familiar with a cause of action of this nature and has not been able to find any authority for the proposition that a legal duty recognized at common law exists in this context. In fact, Congress passed Title VII precisely because existing common-law mechanisms for preventing workplace discrimination were inadequate. *See generally United Steelworkers*

*of Am. v. Weber*, 443 U.S. 193, 202 (1979). At any rate, the court finds that the Amended Complaint is due to be dismissed to the extent it states a claim for negligence against any defendant.

**B.     Title VII Claim**

Count One also invokes the "Civil Rights Act of 1991 amended Title VII," Doc. 34 at 3, which is a reference to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as amended. Title VII does prohibit retaliatory conduct against public employees under certain circumstances. *E.g.*, *Gowski v. Peake*, 682 F.3d 1299, 1312 (11th Cir. 2012). An employer may be sued along with supervisors in their official capacities, but individual suits under Title VII are inappropriate. *E.g.*, *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991) ("[T]he proper method for a plaintiff to recover under Title VII is by suing the employer, either by naming the supervisory employees as agents of the employer or by naming the employer directly.").

Specifically, to survive on a Title VII claim in this context, Plaintiff must show that "(1) []he engaged in statutorily protected activity; (2) []he suffered a materially adverse employment action; and (3) there was a causal link between the two." *Gowski*, 682 F.3d at 1311. Plaintiff's termination is an adverse employment action for Title VII purposes, but even liberally construing his allegations he has not described an activity protected by Title VII that is causally linked to his termination. "An employee is protected from retaliation and discrimination if (1) '[he] has opposed any practice made an unlawful employment practice by this subchapter' (the opposition clause) or (2) '[he] has made a charge, testified,

4

assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter' (the participation clause)." *MacLean v. City of St. Petersburg*, 194 F. Supp. 2d 1290, 1297 (M.D. Fla. 2002) (quoting 42 U.S.C. § 2000e-3(a)). The employment practices covered by Title VII include negative actions taken because of the employee's "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2.

Plaintiff claims that his discharge occurred because he blew the whistle on police corruption—not discrimination on the basis of race or some other protected characteristic. *See, e.g.*, Doc. 34 at 17. In fact, the Complaint contains only one reference to conduct bordering on discrimination of the type recognized by Title VII, when Plaintiff alleges he overheard an unidentified co-worker making a racially derogatory statement but does not state that he complained about this conduct or otherwise brought it to Defendants' attention. Doc. 34 at 15.[1] In the Eleventh Circuit, "in order to hold an employer responsible under Title VII for a hostile environment created by a supervisor or co-worker, a plaintiff must show that the employer knew or should have known of the harassment in question and failed to take prompt remedial action." *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 959 (11th Cir. 1997) (citing *Splunge v. Shoney's, Inc.*, 97 F.3d 488, 490 (11th Cir. 1996)). The claim under Title VII is therefore due to be

---

[1] Defendants claim that Plaintiff did, in fact, notify his superiors of allegations of race discrimination, and attach to the Renewed Motion to Dismiss what they describe as Plaintiff's "manifesto." Docs. 35 at 4 & 35-1. The court has not considered this external exhibit at the Rule 12(b)(6) stage, but does take notice of Plaintiff's prior lawsuit in this district against the MRAA, Perry, and others, in which he alleged that he was the victim of race discrimination. *See Booth Tim James, III v. Montgomery Reg. Airport Auth., et al.*, 2:04-cv-01122-MHT-SRW (M.D. Ala.). Based on the court's review of the pleadings in this prior action, Plaintiff is aware of the elements required for pleading a cause of action under Title VII for a racially hostile work environment. *See id.* at Doc. 32. He has not alleged such a claim here, and he is the master of his complaint. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 395 (1987).

dismissed.

**C.     42 U.S.C. § 1983 Claim**

Finally, the Amended Complaint explicitly invokes 42 U.S.C. § 1983, and elsewhere describes Count Two as a claim for "Work Place Retaliation and Wrongful Termination." Doc. 34 at 7 & 19.  At least at first blush, Plaintiff may have chosen the correct vehicle for this claim by invoking § 1983. *See, e.g.*, *Rankin v. McPherson*, 483 U.S. 378, 383–84 (1987) (recognizing the validity of a § 1983 action for a violation of an employee's freedom of expression).  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted).

More specifically, "a four-stage analysis has evolved" where an employee claims to have been discharged because of speech. *Bryson v. City of Waycross*, 888 F.2d 1562, 1565 (11th Cir. 1989).  First, the court asks "whether the employee's speech may be "'fairly characterized as constituting speech on a matter of public concern.'" *Id.* (quoting *Rankin*, 483 U.S. at 384).  To do so, the court "examines the content, form, and context of the employee's speech to determine whether it addresses a matter of public concern." *Bryson*, 888 F.2d at 1565.  Second, the court engages in a "balancing test, weighing the employee's first amendment interests against 'the interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Id.* (quoting *Pickering v. Bd. of Educ. of Tp. High Sch. Dist. 205, Will Co., Ill.*, 391 U.S. 563,

568 (1968)).  Third, "[i]f the public employee prevails on the balancing test, the fact-finder determines whether the employee's speech played a 'substantial part' in the government's decision to demote or discharge the employee." *Bryson*, 888 F.2d at 1565 (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283 (1977)). "Fourth, if the employee prevails by showing that the speech was a substantial motivating factor in the state's employment decision, the state must prove by a preponderance of the evidence that 'it would have reached the same decision . . . even in the absence of the protected conduct.'" *Bryson*, 888 F.2d at 1565 (quoting *Mt. Healthy*, 429 U.S. at 286). "This fourth stage has been referred to as a 'but for' test; the employer must show that 'its legitimate reason, standing alone, would have induced it to make the same decision.'" *Bryson*, 888 F.2d at 1565 (quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 252 (1989)).

Defendants focus on the first step in this analysis, claiming that Plaintiff's allegations do not support the conclusion that he has engaged in protected speech. *See* Doc. 35 at 3.  Defendants' argument is well-taken, but the court does not agree that the Amended Complaint, read in the light most favorable to Plaintiff, does not state a claim for relief.  Following some manner of discovery in this case, it may well be the case that Defendants could present a compelling argument for a finding as a matter of law that Plaintiff's "whistleblowing" did not relate to a matter of public concern.  However, this court will not hold categorically that Plaintiff's complaints could not state a claim when the Eleventh Circuit has held that "corruption in a police department is an issue of public

concern." *Cooper v. Smith*, 89 F.3d 761, 765 (11th Cir. 1996); *see also Fikes v. City of Daphne*, 79 F.3d 1079, 1084 (11th Cir. 1996) ("Certainly, the question of whether police officers are properly performing their duties, as a public safety issue, must be considered an issue of political or social concern."). Nor does the Amended Complaint make clear that Plaintiff was speaking solely as an employee. *Compare* Doc. 34 at 13–14, *with* Doc. 34 at 4 ("Plaintiff reported the unlawful or potential unlawful behavior as a whistleblower. Plaintiff believe[d] it was his duty to serve and protect the public, as a sworn law enforcement officer and not turn a blind eye to abuse and illegal act[s] committed against the public by fellow Montgomery Regional Airport Authority employees."). Thus, on the face of the complaint, a finding of no protected speech would be premature. The same can be said for the three remaining stages in the § 1983 analysis described in *Bryson*.

In addition to the four-stage analysis, Plaintiff's lawsuit faces the additional hurdle of having been brought against a municipality,[2] which is permissible only if the constitutional violation was caused by an official custom or policy, not merely the result of employees acting independently. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). Read in the light most favorable to Plaintiff, the Amended Complaint alleges that MRAA engaged in just such an official action. *See* Doc. 34 at 11 ("Plaintiff personally . . . requested defendant implement a work place violence policy, hostile work environment policy and a slander policy . . . [MRAA] Executive Director, Phil Perry did

---

[2] For purposes of their Renewed Motion to Dismiss, Defendants have assumed that MRAA is a municipality. Doc. 35 at 2. With no other information on MRAA's status except Plaintiff's allegation that it is a "public corporation," Doc. 34 at 5, the court also assumes at this stage of the proceedings that MRAA qualifies as a municipality subject to suit under § 1983.

not implement policies to prevent hostile work environment, slander and work place violence policies."); Doc. 34 at 18 ("The final decision maker, [MRAA] Executive Director, Phil Perry had knowledge that there was a custom of rights deprivation in the agency and permitted the custom to continue."). As a result, the court recommends that Plaintiff's § 1983 claim against MRAA proceed.

Likewise, the court does not recommend dismissal of the § 1983 claims against the two individual defendants at this stage of the proceedings. A § 1983 claim may be brought against employees in their individual capacities and also in their official capacities, although the latter is functionally a suit against the municipality. *See, e.g.*, *Brandon v. Holt*, 469 U.S. 464, 472 (1985) ("[A] judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents."). In addition, the record is insufficient for a meaningful qualified-immunity analysis. *See, e.g.*, *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003) ("The defense of qualified immunity completely protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known.") (citations and quotations omitted). For these reasons, the court cannot recommend dismissal of Plaintiff's § 1983 claim against Perry or Howell, in either their official or individual capacities.

This court has subject-matter jurisdiction over the surviving § 1983 claim pursuant to 28 U.S.C. § 1331.

### III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that Defendants' Renewed Motion to Dismiss (Doc. 35) be GRANTED in part, and DENIED in part, as set forth above.

It is further ORDERED that the parties are DIRECTED to file any objections to this Recommendation on or before **June 30, 2016.** Any objections filed must identify the specific findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *See Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *Stein v. Reynolds Secs., Inc.*, 667 F.2d 33 (11th Cir. 1982).

DONE this 16th day of June, 2016.

                                                      /s/ Gray M. Borden
                                        UNITED STATES MAGISTRATE JUDGE